## ROOT REFINING CO. v. OLVEY.
### No. 8829.

Circuit Court of Appeals, Eighth Circuit.
Jan. 17, 1931.

Neill C. Marsh, C. W. McKay, and Tom Marlin, all of El Dorado, Ark., for appellant.

J. K. Mahony, H. S. Yocum, J. N. Saye, and W. T. Saye, all of El Dorado, Ark., for appellee.

Before STONE and VAN VALKENBURGH, Circuit Judges, and SCOTT, District Judge.

VAN VALKENBURGH, Circuit Judge.

This is an action at law for breach of contract. April 5, 1927, one J. M. Gregory and wife leased to Garrett-Modisett Drilling Company a certain tract of land containing approximately 75 acres in Union county, Ark. The lease provided for the payment to the lessor of one-eighth of the production of oil and gas from the said premises. September 28, 1927, the Garrett-Modisett Company assigned to the Keen & Woolf Oil Company an undivided one-half interest in 40 acres of said tract, described as the northeast quarter of the southeast quarter of section 10 in township 17 south of range 14 west, in Union county, Ark. As a part of the consideration for the execution of this assignment, and the delivery of the property and rights thereby

transferred, the assignor agreed to drill an oil well upon some part of the leased tract, to a certain sand therein described, afterwards and in this discussion known as sand No. 1. This well was drilled as thus agreed. The lease further provided that, in the event that production resulted from said leasehold estate, the assignee, Keen & Woolf Oil Company, should have charge of the operation thereof. Such production did result.

October 23, 1927, the Garrett-Modisett Company assigned to Root Refineries, Inc., afterwards Root Refining Company, appellant herein, an undivided one-third interest in this entire leasehold subject to the interest theretofore assigned to the Keen & Woolf Oil Company; and December 22, 1927, the Garrett-Modisett Company assigned to Root Refining Company all its right, title, and interest in the northeast quarter of the southeast quarter of section 10 aforesaid, being the same property, an undivided one-half interest in which had theretofore been assigned to Keen & Woolf Oil Company. This last instrument contained the following provision:

"(a) As a part of the consideration for the execution of this instrument and the delivery of the property and rights hereby transferred, the assignee herein agrees that it will deliver to the credit of the assignee, free of cost, in tanks or pipe lines to which such well is connected, the equal one-eighth ($\frac{1}{8}$) of all oil produced, saved and marketed from said Sand No. 1, until the assignor shall have realized from the sale thereof, the aggregate sum of Ten Thousand Dollars; and if gas or casinghead gas, instead of oil, shall be produced from said Sand No. 1, then the assignor herein shall be deemed the owner of one-eighth ($\frac{1}{8}$) of such gas or casinghead gas until it shall have realized from the sale thereof (after allowing credit for all sums realized from the sale of oil as aforesaid) the aggregate sum of Ten Thousand Dollars, provided, however, that the payment of said sum of Ten Thousand Dollars out of oil and/or gas and/or casinghead gas as provided in this paragraph designated (a), shall be made only from sand No. 1; and provided further that the assignee herein shall properly and in a workmanlike manner and with due diligence proceed with the development of said land last above described for the production of oil and gas and/or casinghead gas from said sand No. 1 and the development of said land last above described from the production of oil and gas and/or casinghead gas from said sand No. 1, and the development of said land last above described from the production of

oil and gas and/or casinghead gas from said sand No. 1, is a part of the consideration of this assignment, and is a specific inducement on the part of the assignor for the execution and delivery hereof; and provided further, however, that the assignee hereunder shall not be obligated to drill any well or wells and/or operate any well or wells upon said land last above described if the drilling and/or operation thereof shall not be deemed profitable from said sand No. 1."

Paragraph "b," next following, provided for the payment of an additional $10,000 from the production of oil and gas and for casinghead gas from any sand or sands "under said land last above described, other than said sand No. 1." The land last above described, and referred to in paragraphs "a" and "b," supra, is the northeast quarter of the southeast quarter of section 10 aforesaid. This instrument of assignment concludes with the following provision:

"The total consideration to be paid out of oil is Twenty Thousand Dollars; $10,000.00 of said amount to be paid from oil produced from sand No. 1 as mentioned in (a) above, and $10,000.00 of said amount to be paid from oil produced from sands other than Sand No. 1 as mentioned in (b) above."

It was agreed that there was then located upon said land a producing well, and the sand from which said well was producing oil was designated and referred to as sand No. 1. The Garrett-Modisett Company, assignor, was deemed and recognized as the owner of one-eighth of all oil produced, saved, and marketed from said sand No. 1, or of gas or casinghead gas, if such should be produced instead of oil, until the proceeds realized from such sources should reach the aggregate sum of $10,000. It is expressly emphasized that the payment of this particular $10,000 "shall be made only from Sand No. 1."

January 18, 1928, the Keen & Woolf Oil Company assigned all of its rights, "being an undivided one-half (½) interest in said leasehold premises," together with the well and equipment used or obtained in connection therewith to C. E. Murdock, Incorporated, for a consideration of $50,000, "it being expressly understood that only an undivided one-half (½) interest in said property is hereby conveyed." May 4, 1928, the Garrett-Modisett Drilling Company assigned to appellee, Olvey, all sums of money due to it, under and by virtue of oil payments aggregating the sum of $20,000 specifically provided for under the assignment by the Garrett-Modisett Company to Root Refineries,

Inc., of date December 22, 1927. There have been paid, of the purchase price of $20,000, the $10,000 accruing under paragraph "b" supra, and $4,273.78 of the sum due under paragraph "a" hereinabove set out, leaving a balance due from oil, gas, or casinghead gas to be produced exclusively from sand No. 1 of $5,726.22.

No wells have been drilled to sand No. 1 since the original well put down to that sand by the Garrett-Modisett Drilling Company, as stated above. November 12, 1928, C. E. Murdock, Inc., successor to Keen & Woolf Oil Company, "killed" this well to sand No. 1 by carrying it down to a lower producing sand. This was done after consultation with the Root Refining Company, co-owner with Murdock, Inc., and with the consent of the Root Company. Olvey has made repeated demands upon appellant to pay the balance due or to make further development of sand No. 1. Appellant has failed and refused to do either. It is conceded that whether Murdock, Inc., will ever drive another well into sand No. 1 is problematical, and appears from the record to be highly improbable. This situation leaves no development from sand No. 1, from which, and from which only, the production to pay the balance due Olvey can come. The well to sand No. 1, when it was killed, was producing 60 barrels of oil at a profit of $29 per day.

Appellee brought suit originally in the circuit court of Union county, Ark. The case was removed to the District Court for the Western District of Arkansas because of diversity of citizenship. At the trial a jury was waived by written stipulation. The court found the issues for the plaintiff, and rendered judgment in his favor. The contentions of appellant are (1) that it has not violated any of the conditions of its contract with Garrett-Modisett Drilling Company; (2) that, not deeming the drilling and operation of any wells from sand No. 1 profitable, it had the right to kill the well on that sand, and to drill it deeper for the production of oil from another sand. It is conceded that the new well produces daily 300 barrels of higher priced oil. It is to be remembered that the assignment by the Garrett-Modisett Drilling Company to Root Refining Company expressly provided that the assignee should properly, and in a workmanlike manner, and with due diligence proceed with the development of the land for the production of oil and gas and/or casinghead gas from said sand No. 1, and that this development for the production of oil and gas from said sand

No. 1 was a part of the consideration of the assignment and a specific inducement to the assignor for the execution and delivery thereof. This express language was undoubtedly employed because of the provision that the payment of one-half of the purchase price of $20,000 should be made only from sand No. 1. With this injunction and obligation laid upon it, neither appellant nor any one else has ever made any further development of sand No. 1. It is true that by the terms of the assignment to it the Keen & Woolf Oil Company was given charge of the operation of the leasehold estate. It may be doubted whether, by the express terms of its assignment to Murdock, Incorporated, that same control over the entire tract was transmitted to the latter. The assignor insisted that it should be "expressly understood that only an undivided one-half (½) interest in said property is hereby conveyed." But, in any event, appellant was an equal co-owner with Murdock, Incorporated, in this entire tract. It accepted the obligation imposed by the assignment under which it holds. It cannot be permitted to plead helplessness with respect to such operations as might be necessary to enable it to meet its contractual obligations. Furthermore, Murdock testifies that he conferred with appellant and procured its consent to kill the well to sand No. 1. It is obvious that both these parties wished to enjoy the greater profit anticipated and subsequently realized from a well carried to a lower sand. They knew that this could be done at less expense than by driving an original well, and they, appellant in particular, were indifferent to the interests of appellee, who had succeeded to all the rights of the Garrett-Modisett Drilling Company, and whose resource was limited to sand No. 1.

It is true that the assignment contract upon which appellee relies provides that the assignee, Root Refining Company, shall not be obligated to drill or operate any well or wells, if such should not be deemed profitable, from sand No. 1. But an arbitrary decision to that effect is not permissible, and cannot stand in the face of affirmative proof to the contrary. It is conclusively shown that the operation of the well to sand No. 1 was profitable to a degree that forbade its arbitrary destruction.

The record convinced the trial court that appellant, for its own pecuniary advantage, and in defiance of its contractual obligations, has deliberately co-operated in the destruction of the only existing source from which the balance due appellee could be realized, and still denies any obligation upon it to repair the damage, by any further development of sand No. 1.

We think the judgment below was right, and it is accordingly affirmed.